*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

A-Z ELECTRICAL ENGINEERING, INC,

        Plaintiff-Appellee,

v

JAMES JENKINS and JENKINS
CONSTRUCTION, INC,

        Defendants-Appellants.

UNPUBLISHED
July 23, 2026
9:00 AM

No. 374949
Wayne Circuit Court
LC No. 23-001535-CB

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

This case arises out of a payment dispute between defendants, James Jenkins and Jenkins Construction, Inc (Jenkins Construction), and plaintiff, A-Z Electrical Engineering, Inc, the company defendants hired to perform electrical work. After former counsel for defendants was suspended from the practice of law, the trial court repeatedly, over the course of almost a year, communicated to defendants that they needed to retain new counsel. Defendants essentially ignored the trial court and sent a corporate representative to represent them at trial, despite the fact that he was not an attorney. As a result, the trial court found defendants in default and entered a default judgment in favor of plaintiff for the sum certain that had been determined to be at issue in the court's pretrial order. On appeal, defendants argue that the trial court erred by: entering the default, failing to conduct a separate hearing on damages, and denying their motion to set aside the default judgment. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2023, plaintiff filed a four-count complaint against defendants alleging breach of contract, account stated, unjust enrichment, and fraudulent misrepresentation, all arising out of agreements for two separate electrical production and service projects in 2019. As alleged in the complaint, both projects consisted of work performed in Detroit, with project #1 pertaining to the Guardian Building and project #2 pertaining to the Eighth Precinct Building, with past due outstanding balances owed by defendants on both projects, including $5,664.52 for project #1 and $126,731.00 for project #2. Plaintiff further alleged that it ceased working on the projects in 2019

at the instruction of defendants, at which time the above-referenced balances were owed. Regarding the account stated, plaintiff alleged that defendants received a credit account from plaintiff and that defendants failed to make payments as they became due. Plaintiff attached an affidavit verifying the account, which had a total unpaid balance of $132,395.52 (plaintiff also alleged to be owed post-judgment interest and contract interest capped at the rate of 13% from the date of the filing of the complaint, compounded annually). Regarding the breach of contract count, plaintiff alleged that it performed all of its obligations under a contract between the parties, that defendants breached the contract by failing to issue payment, and that it has suffered the same damages alleged in the first count. The third count of the complaint (unjust enrichment) alleged that it would be inequitable for defendants to be enriched by the work performed by plaintiff without issuing payment, while the fourth count (fraudulent misrepresentation) alleged that defendants intentionally misled plaintiff into believing that defendants would pay plaintiff for the balances that were due at the time defendants halted the two projects.

In April 2023, defendants answered the complaint, alleging that the actual amount owed by defendants, after accounting for setoffs and their counterclaim, was an amount less than the jurisdictional requirement of the circuit court; however, defendants' pleading contained no counterclaim. While defendants admitted the existence of a contract between plaintiff and Jenkins Construction, they denied that James Jenkins had any contractual relationship with plaintiff and denied that he personally owed plaintiff any money. Defendants further denied that they ever requested or authorized any credit account from plaintiff and that it was the contract between plaintiff and Jenkins Construction that governed the relationship between those two parties. Likewise, defendants alleged that plaintiff had no claim for unjust enrichment or fraudulent misrepresentation, that James Jenkins had no relationship with plaintiff, and that the relationship between Jenkins Construction and plaintiff was governed by the contract.

On August 21, 2023, plaintiff served discovery requests on defendants that included various requests for admission pursuant to MCR 2.312, which essentially requested defendants to admit that the amount owed under the contract was $997,875.00, but that defendants only paid plaintiff $871.144.88.[1] On October 17, 2023, plaintiff served defendants with notice that they had allegedly failed to respond to these requests for admission under MCR 2.312.

On November 13, 2023, plaintiff filed a motion requesting that the trial court either enter an order compelling defendants to answer overdue discovery requests or award reasonable attorney fees, costs, and sanctions pursuant to MCR 2.313(A)(5).

On October 8, 2024, the trial court conducted a status conference at which it instructed the parties that the matter would proceed to a bench trial on January 6, 2025, at 9:00 a.m. A written order to that effect was issued on October 11, 2024.

---

[1] We note that the caption of the document failed to identify that it contained requests for admission, in violation of MCR 2.312(A), which provides: "The request must clearly identify in the caption and before each request that it is a Request for Admission."

On January 2, 2025, a final pretrial order was entered, attached to which were plaintiff's proposed trial exhibits, including invoices sent to defendant, electrical permits pulled by plaintiff, and photographs from the jobsites.

On the morning of trial, James Jenkins did not appear, and no attorney appeared on behalf of either defendant.[2]  Counsel for plaintiff moved for entry of a default judgment in the amount of $69,030.02, which was the total amount of the outstanding invoices owed by defendants to plaintiff.  The court allowed a non-attorney corporate representative of Jenkins Construction to speak on the record, who stated that defendant Jenkins Construction overpaid plaintiff, which was "why we were in court today."  Counsel for plaintiff then moved to strike the statement on the basis that the agent was not an attorney and could not speak for either defendant, but the court denied that motion.

The court then recounted the history of the case, which it described as "tortured," based in part on former counsel for defendants having had challenges complying with discovery and facing issues pertaining to his licensure.  The court indicated that it had multiple conferences with James Jenkins in which the court clearly indicated that he needed to retain an attorney to substitute for his former counsel, and that James Jenkins indicated he would either retain successor counsel or settle the case.  Based on the record, the court found that no action had actually been taken by defendants.  The court noted defendants' failure to adequately cooperate with discovery, but ultimately stated it would grant a default judgment in favor of plaintiff and against defendants under 2.603(A)(1), based on defendants' failure to appear at trial, despite proper service of notice of trial.  The court denied plaintiff's requests for attorney fees, but noted that such matters may be the subject of post-judgment proceedings.

On January 9, 2025, a default judgment was entered against defendants and in favor of plaintiff in the amount of $69,030.02.

Twenty days after entry of the default judgment, new counsel for defendants filed a motion to set aside the default judgment, stating that the court had been notified on May 27, 2024 that defendants' attorney was suspended from practicing law for 100 days, but that defendants expected he would resume representation of both defendants around September 7, 2024, i.e., long before the bench trial was scheduled to begin on January 6, 2025.  Attached to the motion was an affidavit signed by James Jenkins essentially indicating that he thought defendants' attorney would represent them at trial, that he individually never had any contract with plaintiff, and that plaintiff never completed the work it was contracted to perform, causing Jenkins Construction to hire another entity to complete that work.

Plaintiff responded to defendants' motion by denying their representation that they believed former counsel would appear at the trial to represent them, attaching an email from him,

---

[2] The trial court appears to have reached out to former counsel when no attorney appeared for defendants, in light of the trial court having conducted an informal videoconference the morning of trial that included former counsel.  As mentioned previously, former counsel was not an attorney in good standing at the time of trial, due to his license to practice law having been suspended, meaning that he could not represent either defendant at trial.

from the morning of January 3, 2025, stating that he remained under suspension until March 2025, and indicating that he had been in communication with Jenkins Construction and James Jenkins.

At the subsequent hearing on defendants' motion to set aside the default judgment, the trial court noted that the contents of the motion did not communicate the long tortured procedural history of the case, which had been filed almost two years before the date of the bench trial. While defendants' new counsel admitted that his clients had neglected to have counsel appear at trial on their behalf, he nonetheless argued that the neglect was excusable because: they believed that their former counsel would be reinstated before the trial date and appear as scheduled; they sent a corporate representative to attend the trial, i.e., they did not simply ignore the trial date; and they had a meritorious defense. Counsel for plaintiff argued that: his client had not been paid for work performed, it was now close to a year since defendants' attorney had been suspended, emails exchanged between the court and the parties showed that defendants were aware their former counsel could not appear for them at trial due to suspension, and James Jenkins submitted a false affidavit by suggesting that he expected his former counsel to be at trial or to have another attorney there to represent him. The court noted that there had been appearances during that time by James Jenkins, who was told repeatedly that he needed to retain counsel. When defense counsel was asked if he had any further argument, he emphasized that James Jenkins is not a lawyer, meaning that he did not understand or realize that his former counsel was not going to have someone appear at trial on defendants' behalf. He again argued that there was a serious dispute about whether the work was done in this matter, which should be decided by a trial.

On the record, the court agreed that defendants had neglected to appear at trial, but did not find that neglect excusable. Further, the court found that James Jenkins knew defendants needed an attorney to represent them at trial, but that he decided not to retain counsel, and did not personally appear for the trial. The court indicated that it would deny defendants' motion for those reasons and entered a written order denying the motion to set aside the default judgment. This appeal followed.

## II. STANDARD OF REVIEW

Entry of a default is governed by MCR 2.603(A)(1), which states:

> If a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the clerk must enter the default of that party if that fact is:
>
> (a) known to the clerk of the court, or
>
> (b) verified in the manner prescribed by MCR 1.109(D)(3) and filed with the court in a request for default.

Entry of a default judgment is governed by MCR 2.603(B), which states in pertinent part:

> (1) Notice of Request for Default Judgment.
>
> (a) A party requesting a default judgment must give notice of the request to the defaulted party, if

(i) the party against whom the default judgment is sought has appeared in the action;

(ii) the request for entry of a default judgment seeks relief different in kind from, or greater in amount than, that stated in the pleadings; or

(iii) the pleadings do not state a specific amount demanded.

(b) The notice required by this subrule must be served at least 7 days before entry of the requested default judgment.

* * *

(d) If the default is entered for failure to appear for a scheduled trial, notice under this subrule is not required. [Emphasis added.]

Absent a clear abuse of discretion, the trial court's ruling on a motion to set aside a default will not be reversed. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999).

A party against whom a default judgment is entered may move to set it aside pursuant to MCR 2.612(C)(1), which states:

On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

This Court also reviews a trial court's denial of a motion to set aside a default judgment for an abuse of discretion. *Tindle v Legend Health, PLLC*, 346 Mich App 468, 488; 12 NW3d 667 (2023).

"The determination that a trial court abused its discretion involves far more than a difference in judicial opinion. Rather, an abuse of discretion occurs only when the trial court's

decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007) (quotations marks and citations omitted).

## III. LAW AND ANALYSIS

On appeal, defendants first argue that it was not proper for the court to enter a default in this matter. Secondarily, even if this Court determines the default was properly entered, defendants argue that they were not afforded the requisite opportunity to challenge damages asserted by plaintiff. Finally, defendants argue the trial court should have granted their motion to set aside the default judgment. We disagree.

## A. ENTRY OF DEFAULT

Defendants argue that the default was improperly entered by the trial court because they did not fail to appear for trial or otherwise fail to defend this matter on the basis that a corporate representative for Jenkins Construction did, in fact, appear at trial ready to testify about documentary evidence that defendants argue would have defeated plaintiff's claim. But defendants' argument is directly contradicted by longstanding Michigan law, which does not allow a corporation to appear in court without counsel, but does permit an individual to appear *in propria persona*. "An individual may appear in proper person; a corporation, however, can appear only by attorney regardless of whether it is interested in its own corporate capacity or in a fiduciary capacity." *Peters Prod, Inc v Desnick Broadcasting Co*, 171 Mich App 283, 287; 429 NW2d 654 (1988), citing *Detroit Bar Ass'n v Union Guardian Trust Co*, 282 Mich 707, 711; 281 NW 432 (1938). No attorney appeared at trial for Jenkins Construction, which means that Jenkins Construction failed to appear at trial. James Jenkins likewise failed to appear at trial, i.e., he did not appear *in propria persona*, nor did he appear via an attorney.

Defendant cites to no legal authority suggesting that default was not a proper remedy for defendants' failure to appear at trial.

Thus, we cannot hold that the trial court abused its discretion by entering a default against defendants pursuant to MCR 2.603.

## B. HEARING ON DAMAGES

Defendants next argue, for the first time on appeal, that the trial court failed to conduct a requisite hearing on damages after entry of the default in this matter, citing to MCR 2.603(B)(3)(b), which states:

> If, in order for the court to enter a default judgment or to carry it into effect, it is necessary to
>
> (i) take an account,
>
> (ii) determine the amount of damages,
>
> (iii) establish the truth of an allegation by evidence, or

(iv) investigate any other matter,

the court may conduct hearings or order references it deems necessary and proper, and shall accord a right of trial by jury to the parties to the extent required by the constitution.

While defendants moved the trial court to set aside the default judgment, they never argued in the trial court that it was required to conduct a hearing on damages. This Court is required to apply the raise-or-waive rule in civil cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). Because defendants failed to raise this issue below, they have waived it. That said, we note that defendant's brief does not explain *why* it was allegedly necessary for the court to take any of the steps referenced in MCR 2.603(B)(1)(d). A sum certain of $132,395.52 was alleged to be owed by defendants in plaintiff's complaint. But, by the time of the final pretrial on January 2, 2025, plaintiff was claiming only $69,030.02, consisting of $5,664.52 for project #1 and $63,365.50 for project #2. That sum was specifically referenced as the amount at issue in the pretrial order entered by the court that day and invoices regarding the projects were attached as an exhibit thereto. The record does not indicate that defendants offered any exhibits of their own at the pretrial, i.e., defendants offered no documents to rebut the invoices and other documents submitted by plaintiff. Thus, even if defendants had not waived this issue, we could not hold that the trial court abused its discretion for failing to conduct a separate damages hearing in this matter, which involved a sum certain as indicated by the court's pretrial order.

## C. MOTION TO SET ASIDE JUDGMENT

Defendants' final argument on appeal is that the trial court erred by denying their motion to set aside the default judgment because they showed good cause under Michigan law, including *Shawl v Spence Brothers, Inc*, 280 Mich App 213, 238; 760 NW2d 674 (2008), in which this Court stated the following:

In determining whether a party has shown good cause, the trial court should consider the following factors:

(1) whether the party completely failed to respond or simply missed the deadline to file;

(2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;

(3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;

(4) whether there was defective process or notice;

(5) the circumstances behind the failure to file or file timely;

(6) whether the failure was knowing or intentional;

(7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);

(8) whether the default judgment results in an ongoing liability (as with paternity or child support); and

(9) if an insurer is involved, whether internal policies of the company were followed.

In determining whether a defendant has a meritorious defense, the trial court should consider whether the affidavit contains evidence that:

(1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

(2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

(3) the plaintiff's claim rests on evidence that is inadmissible.

Neither of these lists is intended to be exhaustive or exclusive. Additionally, as with the factors provided in other contexts, the trial court should consider only relevant factors, and it is within the trial court's discretion to determine how much weight any single factor should receive. [*Id*. at 238-239 (footnote omitted).]

Defendants argue that they had a reasonable excuse for not appearing at trial, which is that they thought their former counsel or some other licensed attorney would appear on their behalf. Further, they argue that a manifest injustice would occur if the default judgment was not set aside. As proof that their mistake was reasonable, defendants argue that the trial court essentially made the same mistake regarding defendants' former counsel by contacting him the morning of the trial and serving the default judgment on him.

But the record in this matter demonstrates that defendants were aware that their former counsel had been suspended long before the date of the trial and that they nonetheless failed to retain new counsel. Former counsel's suspension began on April 30, 2024. The only evidence of defendants' allegedly mistaken belief was the affidavit of James Jenkins, submitted in support of defendants' motion to set aside the default judgment, which indicated that defendants believed their former counsel's suspension would last for only 100 days, meaning that he would be reinstated long before the trial date, and that he would be present at trial to represent them.

As for defendant Jenkins Construction, defendants completely ignore the fact that it was required to retain new counsel as soon as its former counsel was suspended. *Peters Prod*, 171 Mich App at 287. The record is clear that new counsel never appeared on behalf of Jenkins Construction until after entry of the default judgment.

As for James Jenkins, an email exchange between the trial court, plaintiff's counsel, and defendants' former counsel on Friday, January 3, 2025, at 11:26 a.m., suggests that defendants'

former counsel communicated with his clients about the upcoming January 6, 2025 trial and that he remained under suspension until March of that year. That email exchange also indicated that James Jenkins would not appear at trial, due to a medical appointment. However, defendants' have never argued that there was any emergency in this matter concerning that medical appointment, i.e., defendants have never provided any reason as to why James Jenkins failed to appear other than the allegations contained in the affidavit in which he said he thought defendants' former counsel would appear.

With regard to defendants' argument that their mistake should be deemed reasonable because the trial court called their former counsel the morning of trial and sent the default judgment to former counsel, defendants conflate the court's attempts to provide notice to defendants with the belief that former counsel still represented them. Considering the extent to which the trial court repeatedly communicated defendants' need to retain new counsel, we find defendants' implication that they somehow did not know that former counsel was suspended to be utterly without merit. Based on the lower court record, it appears that defendants did not update their attorney information in the MiFILE electronic service system after their former attorney was suspended. Thus, anything filed in the case continued to be sent to their former counsel. As far as the court calling former counsel the morning of the trial, that was clearly a courtesy made by the trial court to defendants, i.e., since they failed to appear, the court at least attempted to contact them (through their former counsel).

Although the trial court did not explicitly reference *Shawl*, defendants do not argue that it was required to do so.[3] Nonetheless, the *Shawl* factors do not favor defendants. Defendants completely failed to appear at trial, as the trial court noted. The motion to set aside the default judgment was timely, but defendants do not indicate why they waited 20 days to file it. Defendants note that the default judgment was served on their former counsel, not on them, but they fail to argue that they did not receive timely notice of the judgment nor do they even indicate that they provided the court with contact information after their attorney was suspended. The trial court thoroughly reviewed the circumstances behind defendants' failure to appear and found that their neglect was not excusable. As noted above, the size of the judgment was actually less than the sum certain pleaded in plaintiff's complaint, and it was the precise amount that had been held to be in controversy in the court's pretrial order.

While defendants continue to allege that they had a meritorious defense to this case, they provided no evidence to the trial court of such a defense, other than James Jenkins's affidavit stating that he had no contract with plaintiff, individually; that the subject work was not completed by plaintiff; and that another entity completed the work. But even that affidavit fails to rebut critical allegations contained in plaintiff's complaint. Plaintiff admitted that it did not complete the projects; rather, plaintiff alleged that it ceased working on them at defendants' instruction. Plaintiff submitted invoices to the court that it alleged to have sent to defendants for the work that it did complete. James Jenkins's affidavit fails to refute that defendants received the invoices, that the invoices were not paid, or dispute the amount of the invoices. While James Jenkins's sworn

---

[3] Defendants did not cite to *Shawl* in their motion to set aside the default judgment nor did defendants rely upon *Shawl* during the hearing on the motion.

-9-

statement that he did not individually have a contract with plaintiff may have been a defense to the breach of contract claim, the affidavit does not rebut various other allegations in the complaint, such as that he intentionally made false representations to plaintiff regarding material facts pertaining to his business dealings with plaintiff and that plaintiff suffered economic damages by relying upon those misrepresentations.

As it pertains to a motion to set aside a default judgment, this Court has previously emphasized that "trial courts should base the final result on the totality of the circumstances." *Shawl*, 280 Mich App at 237. Our review of the lower court record confirms that the trial court did precisely that, i.e., the court reviewed the totality of the circumstances including, but not limited to: the "tortured" procedural history of the case; the many occasions over the course of almost a year on which the court clearly told defendants that they needed to retain new counsel; the fact that defendants failed to appear at trial; the fact that James Jenkins was an experienced businessman who knew that his company was required to have a lawyer, but nonetheless willfully ignored that requirement; defendants' motion to set aside the default judgment, the plaintiffs' response filed by plaintiff, and the parties' oral argument on that motion.

We hold that the trial court did not abuse its discretion because the denial of defendant's motion to set aside the default judgment was not outside the range of reasonable and principled outcomes. *Saffian*, 477 Mich at 12.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace